**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PLUMEUS, INC., a Canadian corporation,** | ) | |
| | ) | |
| | ) | **13 C 2206** |
| **Plaintiff,** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **v.** | ) | |
| | ) | |
| **INTERSOG LLC, a Delaware limited liability company,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues defendant for, among other things, trademark dilution, breach of contract and tortious interference with business expectancy. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 12 (b)(6) motion to dismiss these three claims. For the reasons set forth below, the Court grants the motion.

**Facts**

Plaintiff has been using the marks PSYCHTEST.COM and PSYCHTESTS in interstate commerce in connection with psychometric evaluations and psychological testing since 1996. (*Id.* ¶¶ 8-9.) Plaintiff owns the U.S. trademark registration for PSYCHTESTS.COM , which is registered on the principal register of the U.S. Patent and Trademark Office, and has invested "substantial resources" in "numerous" marketing campaigns using the marks. (*Id.* ¶¶ 9-11.)

In December 2008, plaintiff received an email from defendant that said:

We are doing applications for mobiles (iPhone, Android, etc). We are interested in your tests as we have developed an application for mobiles as MAD (mobile applications development) Tests, it is our own free product. Using this product, the

user can pass tests which are located in our database. The authors can have the rights to use our interface to create their own tests and download them to the database.

We propose [to] you the exclusive right to put your tests in our database. The technical process will be our task. We need only your approvement and permit [sic]. We guarantee to display info about your site before each of test use.

(*Id.*, Ex. B, Email from Def. to Pl. (Dec. 18, 2008).)

On January 30, 2009, plaintiff sent defendant a mutual confidentiality agreement ("MCA"), which both parties signed. (Compl. ¶ 17.) Pursuant to the agreement, plaintiff gave defendant confidential information about the development work it had done and planned to do on a mobile device app. (*Id.* ¶ 18.) Despite months of subsequent negotiation, the parties never reached an agreement about developing an app, and the MCA remains in effect. (*Id.* ¶ 19.) Nonetheless, in early 2009, defendant launched an app called PsychTests, using an "eyeball" logo much like the one plaintiff has used since 2004. (*Id.* ¶¶ 13, 20.)

After discovering defendant's app in July 2012, plaintiff sent defendant two cease and desist letters. (*Id.* ¶ 21; *see* Compl., Ex. C, Email from Pl. to Def. (Aug. 8, 2012); *id.*, Ex. E, Letter from Pl. to Def. (Aug. 14, 2012).) On August 17, 2012, defendant sent a letter to plaintiff agreeing to:

1. Cease and desist from any further use of the infringing trademark and other imitations or simulations of Plumeus' trademarks, service marks or name "PsychTests"; and
2. Disable, remove and take down Psychtests 1.6.0 and any other versions from our website; and
3. Inform target users and clients that Pyschtests 1.6.0 and any other versions will no longer be available due to a breach of trademark rights and clearly distinguish that we, and all our affiliates or principals. have no relationship with Plumeus Inc. . . . and [its] affiliates and principals; and
4. Communicate with all depositories and download sites with instructions to take down Psychtests 1.6.0 and any other versions; and
5. Rename and redesign Psychtests 1.6.0 and any other version without infringing Plumeus' trademarks.

2

(*Id.*, Ex. F, Email from Def. to Pl. (Aug. 17, 2012).)

Defendant did not, however, comply with the conditions in the August 17, 2012 letter and continues to offer the contested app using plaintiff's marks. (Compl. ¶¶ 27-31, 38-39.)


### Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff's third claim, for trademark dilution, requires it to allege that: "(1) it owns a famous mark that is distinctive; (2) the defendant is using a mark in commerce that allegedly dilutes the plaintiff's famous mark; (3) the defendant's use of its mark began after the plaintiff's mark became famous; and (4) the defendant's use of its mark is likely to cause dilution by blurring or by tarnishment." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012); *see* 15 U.S.C. § 1125(c). A "famous" mark is one that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A); *see Coach Servs., Inc.*, 668 F.3d at 1373-74 (stating that the Lanham Act's use of the "'general consuming public' as a benchmark . . . eliminated the possibility of 'niche fame'" as a basis for a dilution claim, which is available only for "a mark that has become a household name") (quotation omitted). Among the factors considered in determining whether a mark is famous are: (1) "[t]he duration, extent, and geographic reach of advertising and publicity

of the mark, whether advertised or publicized by the owner or third parties"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (iii) "[t]he extent of actual recognition of the mark"; and (4) "[w]hether the mark was registered . . . on the principal register." § 1125(c)(2)(A).

With respect to the fame of its marks, plaintiff alleges that the PYSCHTESTS.COM mark is registered on the principal register, it has "invested substantial resources" in "numerous national and international marketing campaigns" using the marks since 1996 and "[t]hrough [its] longstanding, continuous, and extensive use, the PYSCHTESTS.COM and PSYCHTESTS marks have become famous in the United States and Canada." (Compl. ¶¶ 9-11, 67.) These allegations are insufficient, within the meaning *Twombly*, to suggest that plaintiff's marks are household names for psychological testing services. *See Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757-59 (S.D.N.Y. 2012) (dismissing trademark dilution claim because plaintiffs had "not alleged facts indicating that the cups', bottles', pacifiers', teething keys', and food containers' trademarks are recognized beyond a niche market, *i.e.*, the baby product market,"); *Bd. of Regents Univ. of Tex. Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) (stating that dilution claims are restricted to "those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls and the like") (citations omitted).

Plaintiff's fifth claim is for defendant's alleged breach of the MCA, which requires allegations of "offer and acceptance, consideration, definite and certain terms of the contract, plaintiff's performance of all required contractual conditions, the defendant's breach of the terms of the contract, and damages resulting from the breach." *Mannion v. Stallings & Co., Inc.*, 561 N.E.2d 1134, 1138 (Ill. App. Ct.1990). Plaintiff alleges that the parties executed the MCA, but does

not attach the contract, set forth its terms or identify the terms that defendant allegedly breached. (*See* Compl. ¶¶ 17-18.)  Thus, it has not stated a viable claim for breach of contract.

Plaintiff's eighth claim, for tortious interference with business expectancy, requires allegations that plaintiff had a reasonable expectation of entering into a valid business relationship, defendant was aware of and intentionally acted to prevent plaintiff's expectancy from becoming a business relationship and plaintiff was damaged as a result.  *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991).  "A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party."  *Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005).  Plaintiff alleges that defendant interfered with its expectation of entering into business relationships with consumers of the mobile app it planned to develop and launch.  (Compl. ¶¶ 115-18.)  Plaintiff also alleges, however, that it has been working on an app since 2009.  (*Id.* ¶ 17.)  Plaintiff's apparent failure to produce an app between 2009 and July 2012, when it discovered defendant's alleged infringement, vitiates the inference that plaintiff had a reasonable expectation of selling an app that was thwarted by defendant's alleged actions.  Accordingly, the Court dismisses claim eight.

**Conclusion**

For the reasons set forth above, the Court grants defendant's motion to dismiss [24] claims three, five and eight, which are dismissed without prejudice. Plaintiff has fourteen days from the date of this order to amend these claims, if it can do so and comply with Rule 11. If plaintiff fails to amend them in that time, the Court will dismiss these claims with prejudice.

**SO ORDERED.**                                    **ENTERED: October 11, 2013**

_____

**HON. RONALD A. GUZMAN**
**United States District Judge**